***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Commission and subject to the terms of the Workers' Compensation Act and the Commission has jurisdiction over the parties and subject matter.
2. Plaintiff was an employee of defendant-employer, who was self-insured for workers' compensation purposes on July 24, 2005.
3. Plaintiff sustained an injury by accident on July 24, 2005.
4. Plaintiff has not returned to work at defendant-employer since June 8, 2006.
5. Plaintiff's average weekly wage is $1,248.50, which yields the maximum compensation rate for 2005 of $704.00.
6. The following documents were stipulated into evidence at the Deputy Commissioner's hearing:
 a. Stipulated Exhibit #1: CD of medical records
 b. Stipulated Exhibit #2: I.C. Forms
 c. Stipulated Exhibit #3: Mediation bill
 d. Stipulated Exhibit #4: Correspondence dated October 12, 2005
7. In addition to the Stipulated Exhibit(s), the following exhibits were admitted into evidence before the Deputy Commissioner:
 a. Defendant's Exhibit #1: 1099 Form from 2007
8. The issues before the Commission are whether the Form 24 is void as a matter of law, whether the Form 24 should be set aside, whether plaintiff remains disabled pursuant to the Act, whether plaintiff is entitled to ongoing medical treatment, whether plaintiff is entitled to compensation for scarring, whether defendant is entitled to a credit for overpayment of *Page 3 
temporary total disability compensation, and whether defendant is entitled to a credit for mediator fees.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 56 years old. Plaintiff has a high school diploma and was truck driver for approximately 20 years, 13 of which were with defendant-employer. Plaintiff also has experience in dispatching and terminal management.
2. On July 24, 2005, plaintiff was involved in a motor vehicle accident arising out of and in the course of his employment with defendant-employer. As a result, plaintiff sustained injuries to his back, right shoulder, and ribs, as well as severe burns to his lower extremities and chest, encompassing approximately 20% of his total body surface. This claim was accepted by defendant on a Form 60 dated October 25, 2005.
3. Plaintiff was air-lifted to North Carolina Baptist Hospital where he was diagnosed with right rib fractures, hemopneumothorax (blood and air in the chest cavity), a right upper lobe pulmonary contusion, partial thickness burns to the right thorax, and partial thickness burns to the bilateral lower extremities. On August 1, 2005, plaintiff had excision and allografts for his burns. Plaintiff underwent split thickness skin grafting for his burns on August 8, 2005, and on August 15, 2005, plaintiff was discharged from the hospital. Subsequent to plaintiff's release from the hospital, Interim HealthCare assisted with his medical care at home. *Page 4 
4. On August 25, 2005, plaintiff began treating with Susan Everette, RN, MSN, FNP-BC at Park Plastic Surgery for follow-up care for his burns. Ms. Everette works in the plastic surgery department of Boice-Willis Clinic under Dr. Frederick Park. She reviewed the medical records from plaintiff's surgery at Baptist Hospital prior to beginning treatment, which indicated that plaintiff suffered burns bilaterally to the legs and the right abdomen and that the treatment consisted of skin grafting to all the burns. She testified that plaintiff had burns over 1,300 square centimeters of his body. Ms. Everette testified that the split thickness skin grafting meant that plaintiff had "large open areas following the burn, and he had skin that was actually meshed to make it thinner and applied to the open areas to cover those burned areas."
5. On August 30, 2005, plaintiff presented to Dr. Gilbert Alligood at Tarboro Clinic for follow-up treatment for his chest pain. A chest x-ray performed showed moderately displaced fractures of the third through eighth ribs on the right side, some of which had not formed much of a callus. Additionally, the x-ray indicated a moderate pleural effusion on the right side representing some blood in the chest cavity. A September 30, 2005 CT scan of plaintiff's chest showed that the pleural effusion had diminished, but several of the right-sided rib fractures remained unhealed and displaced.
6. On October 17, 2005, plaintiff presented to Thomas Galisin, PA-C at Carolina Regional Orthopaedics, for treatment of his lower back. Plaintiff reported that he became aware of his back pain only recently, since the pain medication for his burns had obscured his lower back symptoms. Plaintiff had complaints of right-sided lower back pain with no radiation into his legs but some bilateral numbness in both calves and both feet. Mr. Galisin diagnosed plaintiff with low back pain with bilateral foot numbness. He prescribed a steroid dosepak and anti-inflammatory medication and recommended physical therapy. Mr. Galisin also imposed *Page 5 
restrictions of light duty work with no prolonged sitting or standing and no driving for longer than 30 minutes. Plaintiff participated in physical therapy for his back at Heritage Hospital from October 27, 2005 through November 18, 2005.
7. Plaintiff returned to Dr. Alligood on November 14, 2005. X-rays of the chest and right ribs revealed continued unhealed fractures of the ribs. Plaintiff was also treated by Mr. Galisin, reporting that his lower back pain and numbness in both feet had not been alleviated with physical therapy or medication. Mr. Galisin recommended a lumbar MRI to rule out nerve impingement, and he wrote plaintiff out of work since plaintiff was unable to drive the distances required.
8. A lumbar MRI was performed on November 17, 2005, and showed mild multi-level degenerative changes at L4-L5 and L3-L4 with minimal encroachment of the lateral recesses and no evidence of nerve root compression. The MRI findings indicated stenosis, which was a pre-existing degenerative disease that was rendered symptomatic after the accident.
9. On November 23, 2005, plaintiff presented to Mr. Galisin and Dr. David Miller at Carolina Regional Orthopaedics. Dr. Miller recommended an epidural steroid injection at L4-L5 and opined that plaintiff should continue out of work. The epidural steroid injection at L4-L5 was performed on December 8, 2005, and reduced plaintiff's pain on the right side of his leg, but did not affect the numbness in both feet. Dr. Miller released plaintiff to return to light duty work with restrictions of no lifting more than 25 pounds and no driving more than 30 miles.
10. On December 15, 2005, Ms. Everette released plaintiff to return to his pre-injury job as a truck driver without restrictions from the standpoint of his burns. Plaintiff returned to work for defendant-employer on December 19, 2005. A Form 28 was filed on February 22, 2006. *Page 6 
11. On February 28, 2006, plaintiff presented to Dr. Alligood complaining of right shoulder pain. Plaintiff stated that the pain occurred when pulling the fifth wheel attachment on his trailer at work. Dr. Alligood provided plaintiff with an injection, medication, and instructions for exercises. Dr. Alligood noted that he did not see any indication that plaintiff's right shoulder pain was work-related.
12. An MRI of plaintiff's right shoulder was performed on March 13, 2006, and showed a moderately-sized low-grade partial thickness rotator cuff tear, minimal acromioclavicular arthrosis, and a tear of the glenoid labrum with an adjacent paralabral cyst. Plaintiff then began treating at Carolina Regional Orthopaedics for his right shoulder on March 23, 2006, under the care of Stephen Mound, physician's assistant for Dr. Robert Martin. Mr. Mound provided a subacromial steroid injection and recommended that plaintiff continue with work activities with restrictions of no lifting more than 25 pounds and no overhead use of the right arm.
13. On May 23, 2006, plaintiff underwent a right shoulder arthroscopic debridement and subacromial decompression performed by Dr. Martin at Heritage Hospital. Dr. Martin's post-operative diagnoses were right shoulder glenoid labral tear, subacromial impingement syndrome, and acromioclavicular joint arthropathy. Defendant accepted plaintiff's claim for a right shoulder injury and provided payment for treatment to plaintiff's right shoulder, as well as reinstated temporary total disability benefits.
14. On June 5, 2006, plaintiff was automatically terminated pursuant to company policy since his 12 weeks of leave under the Family Medical Leave Act expired. *Page 7 
15. Plaintiff continued to present for treatment of minor conditions, but by the end of July 2006, he was released to return to work by all physicians treating his burns, shoulder, back and chest injuries.
16. On October 3, 2006, defendant filed a Form 24 Application to Terminate Payment of Compensation. The date by which plaintiff was to respond to the Form 24 Application was omitted; therefore, the Form 24 Application was re-filed on November 1, 2006. Plaintiff did not contest the Form 24 Application or submit any contradictory documentation. Special Deputy Commissioner Meredith Henderson approved defendant's Form 24 Application on November 19, 2006, ruling that defendant could terminate plaintiff's temporary total disability benefits as of November 6, 2006.
17. On December 12, 2006, plaintiff presented to Tarboro Clinic for his commercial driver's license physical exam. Frances Smyth, family nurse practitioner, examined plaintiff. Plaintiff was physically cleared to return to work as a truck driver and completed the requisite Department of Transportation forms.
18. On December 20, 2006, plaintiff returned to Dr. Martin. Plaintiff had no pain and had returned to normal activities. Plaintiff had regained full motion and normal strength of his right arm. Plaintiff had an excellent result from his right shoulder surgery and had reached maximum medical improvement. Dr. Martin reiterated that plaintiff could return to normal work. Plaintiff had a perfect score on the UCLA Shoulder Rating Scale, the professional scale for evaluating shoulders. Dr. Martin assigned a 5% permanent partial impairment rating to plaintiff's right arm in accordance with the Industrial Commission Rating Guide.
19. In December 2006, Lydia Gurganus, manager for defendant-employer, offered plaintiff employment as a dock worker and driver, which was the only job she had available at *Page 8 
that time. The dock worker/driver position paid $17.00 per hour, which was the top of the pay range for that position, but it was less than half of what plaintiff made prior to his injury by accident. Ms. Gurganus testified that as a dock worker, plaintiff would be expected to lift at least 50 pounds and if he was not driving a forklift, plaintiff would be on his feet for the entire shift. She explained that it was a very physical job, with significantly higher lifting requirements than plaintiff's truck driving job. Ms. Gurganus stated that after plaintiff returned to work for eight weeks, he could petition the owner of defendant-employer to reinstate plaintiff's seniority. Reinstatement of plaintiff's seniority and higher pay, however, was not guaranteed. Plaintiff refused the offer of employment. Plaintiff has not contacted defendant-employer since that time to see if any other positions became available.
20. Plaintiff applied for and received unemployment compensation in the amount of $378.00 per week for 26 weeks, ending on May 27, 2007. Plaintiff testified that between December 2006 and May 2007, he was looking for work and applied for over 30 different jobs as a driver.
21. On May 27, 2007, plaintiff began working for a friend, Roger Moore, at East Carolina Outfitters, a hunting guide service. Plaintiff's job was seasonal and his duties included spraying weed killer on the lanes through the woods, and transporting and guiding hunters to and from the stands. Plaintiff also assisted with checking and performing small maintenance tasks on the 250 hunting stands and helped with feeding the deer, a task that involved shoveling or pushing corn out of a "mule," or heavy-duty golf cart. Plaintiff was not required to carry heavy items and the deer stands were handicap accessible.
22. Plaintiff earned $10.00 per hour with East Carolina Outfitters, a portion of which covered the use of plaintiff's truck. By the end of deer hunting season on January 1, 2008, *Page 9 
plaintiff had back pain, numbness and irritation from the scars that caused him to no longer be able to work for East Carolina Outfitters. Dr. Miller took plaintiff out of work as of February 20, 2008. Mr. Moore testified that if he had work available, he would re-hire plaintiff. Plaintiff earned a total of $14,045.00 while working for East Carolina Outfitters in 2007.
23. On February 20, 2008, plaintiff returned to Carolina Regional Orthopaedics and presented to Joe Williams, PA-C, with complaints of low back pain, right buttock pain, and bilateral foot numbness, as well as a new complaint of pain in his groin area, particularly in his testicles. Upon physical examination, plaintiff demonstrated limited motion of the lumbar spine, but his reflexes were intact, he had full strength, and bilateral straight leg tests were negative. Plaintiff had some areas of decreased sensation on his lower extremities in the areas of the healed burns and grafting. Plaintiff wanted to pursue further treatment; therefore, Mr. Williams ordered an updated lumbar MRI and kept plaintiff out of work.
24. On March 5, 2008, plaintiff presented to Dr. David Miller at Carolina Regional Orthopaedics after having a lumbar MRI. The MRI showed disc disease at L1-L2 with narrowing disc space and degenerative changes, facet arthropathy at L4-L5 bilaterally with foraminal stenosis, and facet hypertrophy at L3-L4 with possible stenosis. Dr. Miller testified that the results of this MRI were fairly similar to plaintiff's previous MRI. Plaintiff indicated a desire to pursue a bilateral laminectomy at L3-L4. Dr. Miller opined that a lumbar laminectomy could help plaintiff's back and buttock pain and would hopefully improve plaintiff's numbness by 50%.
25. When asked whether plaintiff's symptoms on February 20 and March 5, 2008 were consistent with plaintiff's original injury to his back in July 2005, Dr. Miller testified, "The symptoms were very, very, very similar; pretty much the same." Regarding whether plaintiff's *Page 10 
need for a laminectomy is related to the July 24, 2005 accident, Dr. Miller stated, "It's not the — it's not the only reason, but it is one of the reasons." When Dr. Miller was asked whether plaintiff's continued problems were related to his injury on July 24, 2005, he responded, "That's one I can't answer, to be honest with you. I don't know. . . .his numbness never went away. . . . So, I would say in regards to that, that probably is still related, and since there seems to be a sort of continuum there." Because plaintiff's back pain got better and there was a span of almost two years between plaintiff's visits to him, Dr. Miller felt that the causation issue regarding plaintiff's low back pain was more difficult to answer. Dr. Miller also testified that as of March 5, 2008, he took plaintiff out of work, in preparation for surgery. If plaintiff did not have surgery, Dr. Miller planned to discuss plaintiff's work status with him and plaintiff would be out of work for an indefinite time.
26. Plaintiff also testified at the Deputy Commissioner's hearing that his back initially felt better in December 2005, but that the numbness never went away and the low back pain slowly increased to where it had been after the accident. Based on the greater weight of the medical evidence, the Commissioner finds that plaintiff's 2008 back condition and numbness are related to his July 24, 2005 injury by accident.
27. Plaintiff presented to Dr. Frederick Park at Park Plastic Surgery on March 3, 2008. This was the first time plaintiff had sought treatment for his scars since June 20, 2006. Plaintiff reported some blistering of the right leg and knee when in the sun and when sweating, but he had not had any blistering during the winter. Plaintiff's scars on his bilateral thighs, lower legs, and right abdomen were well-healed. The scars were mostly soft with a firm area on the abdomen. Dr. Park explained that scarring is difficult to rate, but he gave plaintiff's legs an *Page 11 
overall rating of 20% with "a small additional rating" for the abdomen scars. Dr. Park offered plaintiff injections for the firm abdominal scar.
28. The parties mediated the above case on November 19, 2007. Defendant paid the entire mediator's fee of $737.50.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On July 24, 2005, plaintiff sustained a compensable injury by accident to his back, right shoulder, and ribs, as well as severe burns, arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury." Pittman v. Thomas Howard,122 N.C. App. 124, 130, 468 S.E.2d 283, 286, disc. reviewdenied, 343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident.Snead v. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699 (1970). The North Carolina Court of Appeals stated in Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997) that once the Commission has found a claim compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendants to prove that the medical treatment is not directly related to the compensable injury. Id. In Reinninger v. PrestigeFabricators, Inc., 136 N.C. App. 225, 523 S.E.2d 720 (1999), the Court of Appeals applied the Parsons presumption to a case in which the parties entered into a Form 21 Agreement for Compensation which was *Page 12 
approved by the Commission and therefore constituted an "award" of the Commission, pursuant to N.C. Gen. Stat. § 97-82. The Court of Appeals has also held that an employer's payment of compensation pursuant to a Form 60 is an award of the Commission and that theParsons presumption applies. Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005), disc. reviewimprovidently allowed, 360 N.C. 587, 634 S.E.2d 887 (2006).
3. In the case at bar, the Parsons presumption applies and establishes that plaintiff's back condition in 2008 is directly and causally related to his injury by accident on July 24, 2005. Defendants failed to rebut the presumption that the medical treatment is directly related to the compensable injury.Parsons v. Pantry, Inc., supra.
4. In Dixon v. Durham,128 N.C. App. 501, 495 S.E.2d 380 (1998), the Court held,
 In considering the wages or salary of a pre-injury job and a post-injury job offer, common sense and fairness dictate examination not only of the actual dollar amount paid at a given time, but also of the potential for advancement or, in other words, capacity for income growth.
In the case at bar, the dock worker/driver position paid wages that were less than half of what plaintiff made in his pre-injury position. Additionally, the lifting requirements were much higher than that of a driver and it was uncertain whether plaintiff would ever regain his seniority or former pay. The greater weight of the evidence showed that the dock worker/driver job offered by defendants was not suitable employment and therefore the Commission finds that plaintiff's refusal to accept this employment was justified. In his seasonal position with East Carolina Outfitters, plaintiff earned $10.00 per hour, which was also less than half of plaintiff's pre-injury wages. Thus, the position with East Carolina Outfitters was also not suitable and not indicative of plaintiff's wage earning capacity. Dixon, supra. *Page 13 
5. From December 20, 2006 until May 27, 2007, plaintiff met his burden to prove that he was capable of some work but after a reasonable effort was unable to obtain employment after a reasonable effort. N.C. Gen. Stat. § 97-29; Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Plaintiff was temporarily totally disabled from any employment and is entitled to payment by defendant of temporary total disability compensation at the rate of $704.00 per week beginning December 20, 2006 and continuing until May 26, 2007. N.C. Gen. Stat. § 97-29.
6. After May 27, 2007, plaintiff showed that he continued to be partially disabled by producing evidence that after a reasonable job search, he obtained other employment at wages less than those earned prior to the compensable injury. Larramore v. Richardson SportsLtd. Partners, 141 N.C. App. 250, 540 S.E.2d 768 (2000),aff'd per curiam, 353 N.C. 520, 546 S.E.2d 87 (2001).
7. As the result of his compensable injury by accident on July 24, 2005, plaintiff was temporarily partially disabled and entitled to payment by defendant of temporary partial disability compensation at the rate of two-thirds of the difference between the average weekly wages plaintiff earned prior to the injury by accident and the diminished wages he was able to earn beginning May 27, 2007 and ending December 31, 2007. N.C. Gen. Stat. § 97-30.
8. As the result of his compensable injury by accident on July 24, 2005, plaintiff was again totally disabled from any employment and is entitled to payment by defendant of temporary total disability benefits beginning January 1, 2008 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29;Russell v. Lowes Product Distribution, supra.
9. Plaintiff is entitled to payment by defendant of all medical expenses incurred or to be incurred as a result of his compensable injury, for so long as such examinations, evaluations *Page 14 
and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability, including treatment of his scars as deemed necessary by Dr. Park or his designee. N.C. Gen. Stat. §§ 97-2(19); 97-25.
10. Plaintiff contends that the filing of the Form 24 by an employee of defendant-carrier constitutes the unauthorized practice of law and should result in voiding of the application to terminate benefits. However, there is nothing in Chapter 97 that prohibits parties from self-representation and it has always been the position of the Commission to allow the same. Further, N.C. Gen. Stat. § 97-18.1, which addresses the termination or suspension of compensation benefits, does not require an attorney to draft the form to request permission to terminate an employee's benefits. The statute only requires that the "employer" notify the employee or employee's attorney in writing on "a form prescribed by the Commission." For these reasons, the Commission finds that the Form 24 was not improperly filed.
11. As a result of his injury by accident on July 24, 2005, plaintiff sustained permanent injuries to his shoulder, legs, and abdomen. Plaintiff is entitled to compensation for the 5% permanent partial disability rating to his shoulder, for the 20% rating to his legs and any additional rating received for his abdominal area. N.C. Gen. Stat. § 97-31. Plaintiff does not present an argument in favor of entitlement to compensation as a result of disfigurement pursuant to N.C. Gen. Stat. § 97-31(22) and the Commission finds none.
12. Defendant is entitled to a credit for those amounts plaintiff received in unemployment benefits from December 20, 2006 until June 1, 2007. N.C. Gen. Stat. § 97-42.1.
13. According to the Rules for Mediated Settlement Conferences, the mediator's fee "shall be allocated to the parties, as follows: one share by plaintiff(s); one share by the workers' compensation defendant-employer or its insurer." N.C. Mediated Settlement Neutral *Page 15 
Evaluation Conferences, North Carolina Industrial Commission Rule 7(c). The rule further states that defendants are responsible for paying plaintiff's share of the mediator costs, but when the case is concluded, defendants shall be reimbursed for plaintiff's share from benefits that may be determined to be due to plaintiff, and defendants may withhold funds from any award for this purpose.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved below, defendant shall pay plaintiff temporary total disability compensation at the rate of $704.00 per week beginning December 20, 2006 and ending May 26, 2007, and beginning January 1, 2008 and continuing until further Order of the Commission.
2. Subject to an attorney's fee approved below, defendant shall pay plaintiff temporary partial disability compensation at the rate of two-thirds of the difference between the average weekly wages plaintiff earned prior to the injury by accident and the diminished wages he was able to earn beginning May 27, 2007 and ending December 31, 2007.
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraphs 1 and 2 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
4. Defendant is entitled to a credit for any unemployment benefits received by plaintiff from December 20, 2006 until June 1, 2007. *Page 16 
5. Plaintiff shall reimburse defendant a total of $368.75 in mediation costs to be deducted from the award in Paragraph 1 above.
6. Defendant shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability, including treatment of his scars as deemed necessary by Dr. Park or his designee.
7. Defendant shall pay the costs.
This 15th day of May, 2009.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1